# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER N. RHOADES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:16-CV-892-MGG |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

On December 29, 2016, Plaintiff Jennifer N. Rhoades ("Rhoades") filed her complaint in this Court seeking reversal or remand of the Commissioner of Social Security's ("Commissioner's") final decision denying her application for supplemental security income ("SSI"). On April 28, 2017, Rhoades filed her Opening Brief in Support of a Social Security Appeal. On August 2, 2017, the Commissioner filed a response requesting that the Court affirm the Commissioner's decision. Rhoades filed a reply brief on August 16, 2017. This Court may enter a ruling in this matter based on the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g). For the reasons discussed below, the Court remands this matter for further administrative proceedings.

## I. RELEVANT BACKGROUND

On August 20, 2013, Rhoades, age 26, filed an application for Title XVI SSI with the Social Security Administration ("SSA") alleging disability beginning April 1, 2008, due to depression and anxiety, panic disorder, possible bipolar disorder, agoraphobia, and acid reflux .

After the SSA denied her application initially and upon reconsideration, Rhoades requested a hearing before an administrative law judge ("ALJ"), which occurred on March 6, 2014.

Rhoades completed fifth grade after which she was homeschooled. Through homeschooling, Rhoades may have completed eighth grade and some high school level work. She never earned a GED, but gained work experience as a fast food worker, an assistant chef, and a clerk.

At the ALJ hearing, Rhoades testified that she lives with her parents and two children. She reported that she suffers from constant anxiety, weekly panic attacks, hallucinations, forgetfulness, and incidents of unexplained anger. Rhoades claims that these issues manifest in stomach pain, crying fits, tightened chest, hyperventilation, and sleeping problems. Rhoades explained that her symptoms prevent her from leaving home most of the time but that she overcomes her fears and anxiety to drive herself to the grocery store and doctor appointments about two or three times a week. She also testified that she mostly cares for her children but with the help of her mother who makes dinner for the children and helps them with their homework when Rhoades cannot do it herself. In addition, Rhoades indicated that her mother often must remind her to tend to laundry.

Rhoades provided the ALJ with medical records of her medical treatment from December 2011 through June 2015. The record included documentation of regular visits to the Oaklawn Psychiatric Center, including primary care by Kathryn Plummer, N.P. who referred Rhoades for psychiatric treatment by LaRissa M. Chism, M.D., and several sessions with social workers. Rhoades also provided the ALJ with two Mental Capacity Assessments from Dr. Chism, one dated July 3, 2014, the other dated March 11, 2015. In her 2015 opinion, Dr. Chism indicated that Rhoades suffered from greater functional limitations than those reflected in the 2014 opinion

and thus concluded that Rhoades is disabled and unable to work. State Agency consultants, however, opined in 2013 that none of Rhoades's impairments or any combination of impairments were severe.

Upon review of the medical evidence and testimony from Rhoades and a vocational expert at the hearing, the ALJ issued a written decision on September 15, 2015. The ALJ's decision included the following findings based on the five-step disability evaluation prescribed in the SSA's regulations.[1] At Step One, the ALJ found that Rhoades had not engaged in substantial gainful activity since August 20, 2013, her application date. At Step Two, the ALJ found that Rhoades had the following severe impairments: generalized anxiety disorder, obsessive compulsive disorder, severe major depressive disorder, and headaches. At Step Three, the ALJ found that Rhoades's impairments did not meet or medically equal the severity of a listed impairment. Before proceeding to Step Four, the ALJ determined that Rhoades has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations." [DE 8 at 27]. Specifically, the ALJ found that Rhoades

> can perform simple, routine and repetitive tasks that can be learned with a short demonstration or within 30 days; can maintain the concentration required to perform simple tasks; and can remember simple work like procedures. She is limited to low stress work, defined as requiring only occasional decision-making and only occasional changes in the work setting. She can tolerate predictable changes in the work environment and meet production requirements in an environment that allows her to sustain a flexible and goal oriented pace. She is limited from fast-paced work, such as assembly line production work with rigid or strict productivity requirements. The claimant can make simple work-related decisions. She is limited to superficial interaction with coworkers, supervisors, and the public with superficial interaction defines as occasional and casual contact not involving prolonged conversation. The contact with supervisors still involves necessary instruction, but prolonged conversation is not necessary for task completion. She cannot work within close proximity to very loud noises or bright

---

[1] *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

3

and flashing lights, such as fire alarms, fire alarm lights, or strobe lights on more than occasional basis.

[DE 8 at 27].

At Step Four, the ALJ found that Rhoades had no past relevant work. At Step Five, the ALJ considered Rhoades's age, education, work experience, and RFC and determined that as of the date of his decision, Rhoades was able to perform the jobs of Laundry Worker I, Industrial Cleaner, and Dishwasher, which exist in significant numbers in the national economy.

Based on these findings, the ALJ concluded that Rhoades was not disabled as defined by the Social Security Act and therefore did not qualify for SSI benefits. The Appeals Council denied Rhoades's request for review of the ALJ's decision on November 3, 2016. As a result, the ALJ's decision is the Commissioner's final decision eligible for judicial review by this Court. *See* 42 U.S.C. § 405(g); *see also Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

**II.    ANALYSIS**

A court reviewing the decision of an ALJ will only reverse or remand if the ALJ's findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also* 42 U.S.C. § 405(g). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Simply stated, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, the task for the court on judicial review is not to resolve the question of whether the claimant is, in fact, disabled, but whether the ALJ "use[d] the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

4

In reaching its decision, the court must "review the record as a whole, but . . . not . . . reweigh the evidence or substitute [its] judgment for that of the ALJ." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). The court must determine whether the ALJ built a logical bridge from the evidence to his conclusion. *Id.* At minimum, an ALJ must articulate his analysis of the evidence such that the reviewing court can follow his reasoning and be assured that he considered all the important evidence in reaching his conclusion. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in record explicitly to do so as long as the ALJ's analysis provides a "glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).

In this case, Rhoades seeks reversal and remand of the ALJ's decision denying her benefits arguing that: (1) the RFC determination was not supported by substantial evidence because the ALJ improperly weighed Dr. Chism's medical opinion about Rhoades's functional limitations; and (2) the Step Three Listing analysis was also not supported by substantial evidence because of the ALJ's failure to properly consider Dr. Chism's opinion.

### A. Weight Given to the Medical Opinion of Dr. Chism, Rhoades's Treating Physician

A treating source's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 416.927(c)(2). "More weight is [typically] given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). However, an ALJ need not give controlling weight to a treating physician's opinion. If the ALJ does not, he must consider certain factors when deciding how much weight to give the treating physician's opinion, including: (1) the length of the treatment relationship and the

5

frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the physician's opinion was supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area.  20 C.F.R. § 416.927(c)(2)-(5); *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014. When the ALJ assigns less than controlling weight to the physician's opinion after considering these factors, a reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (internal quotations and citations omitted).  However, if the ALJ fails to address these factors in the opinion, a reviewing court cannot assess whether he assigned the proper weight to the treating physician's opinions. *Scrogham*, 765 F.3d at 697.

Here, the ALJ failed to address the details of the treatment relationship between Rhoades and Dr. Chism, which on its own brings into question the propriety of the ALJ's decision to assign little weight to Dr. Chism's opinion.  Regardless of this error, the ALJ's analysis fails to demonstrate to the Court that he considered Dr. Chism's opinion in light of the record as a whole.  In support of his conclusion that the record did not support the extreme functional limitations reported by Dr. Chism, especially in her 2015 opinion, the ALJ only cited medical records reflecting improvement in Rhoades's symptoms or normal examination findings.

For instance, the ALJ references medical records, dated April and May 2012, stating that Rhoades reported less anxiety and irritability while taking prescribed psychotropic medications. [DE 8 at 31].  The ALJ also cited treatment notes from visits with Dr. Plummer, Rhoades's gynecologist, in September and December 2012, during which Rhoades denied experiencing anxiety, depression or suicidal thoughts.  [*Id.*].  Additionally, the ALJ asserted that Rhoades "reported that her anxiety did not prevent her from engaging with the public" citing treatment

6

notes from an October 2012 visit to the Oaklawn Psychiatric Center. [*Id.*]. Furthermore, the ALJ claimed that Dr. Chism's treatment notes from Rhoades's visits on November 15, 2012; January 22, 2013; June 27, 2013; June 5, 2014; and December 30, 2014, "consistently found that [Rhoades] demonstrated normal thought process and content, associations, judgment, insight, and orientation." [*Id.*]. The ALJ also relied upon Dr. Chism's notes dated December 30, 2014, that Rhoades (1) stopped mental health treatment for six months in 2014 due to lack of transportation; (2) maintained a dating relationship as well as caring for her children and home responsibilities; (3) demonstrated good eye contact, concentration and attention, logical thoughts, and orientation along with normal appearance, thought process, associations, thought content, language, fund of knowledge, and muscle strength, tone, gait, and station. [*Id.*].

Based on these treatment notes, the ALJ found it difficult to reconcile Dr. Chism's opinion that Rhoades had extreme functional limitations with this evidence, which the ALJ found inconsistent with such extreme limitations. What is not clear from the ALJ's decision, however, is the extent to which the ALJ considered any of the evidence in the record that supported Dr. Chism's opinion. "An ALJ cannot rely only on the evidence that supports her opinion." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (internal citation omitted). "And while an ALJ need not mention every piece of evidence in her opinion, she cannot ignore a line of evidence that suggests a disability." *Id.* In other words, an ALJ cannot cherry-pick evidence to support his conclusion. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Review of the medical records cited by the ALJ shows exactly this.

There is no dispute that all of the medical records cited by the ALJ reference something positive about Rhoades. Indeed, the ALJ appropriately considered all of those facts that weigh against a disability finding. However, those same records also describe the context of those

7

positive facts, which potentially weigh in favor of a disability finding. For example, medical records show that Rhoades's medications have required constant adjustment despite periodic improvements in her anxiety and irritability levels. Notably, Rhoades suggested that her medications needed further adjustment during her testimony before the ALJ.

The ALJ also appears to have mischaracterized the full nature of Rhoades's condition by summarizing certain medical records. For instance, the ALJ stated that "[Rhoades] reported that her anxiety did not prevent her from engaging with the public." [DE 8 at 31]. However, the treatment note from Rhoades's October 29, 2012, visit to the Oaklawn Psychiatric Center that the ALJ cited in support of this statement reads: "[Rhoades] reports she does not have anxiety in regards to going to a store, but she shares there is only a select few people she can tolerate." [*Id.* at 339]. Moreover, the ALJ's summaries fail to account for the longitudinal record, which shows that Rhoades has wrestled on and off over time with suicidal ideation, blunted affect, hallucinations, and panic attacks among other symptoms. This constant ebb and flow of Rhoades's symptoms is consistent with the basic nature of mental illness.

"[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710; *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). As such, an ALJ must not ignore negative symptoms in the medical record, especially when analyzing symptoms resulting from mental impairments. *Cf. Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

Admittedly, the ALJ in this case was faced with a bit of a Solomonic task to craft an RFC that reconciled Dr. Chism's opinion that Rhoades has extreme limitations with the opinion of the State Agency consultant, who opined that Rhoades's mental impairments did not even rise to the level of severe. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing

8

conflicting evidence from medical experts . . . is exactly what the ALJ is required to do."); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) ("if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict."). The ALJ clearly discounted the State Agency consultant's opinion in favor of Rhoades by finding that she did indeed suffer from severe mental impairments. Nevertheless, the ALJ was still obligated to articulate reasons for discounting Dr. Chism's opinion as inconsistent with the record as a whole. And the ALJ's failure to address evidence that might support the limitations identified by Dr. Chism leaves the Court unable to determine whether the ALJ considered the record as a whole. As such, the ALJ's "cherry-picking" of evidence in support of his decision to give the opinion of Dr. Chism little weight warrants remand.

The ALJ's decision to give Dr. Chism's opinion little weight is flawed for another reason as well. At the end of his analysis of Dr. Chism's opinion, the ALJ stated: "Further, the undersigned notes that this opinion was rendered in the course of pursuit of benefits, which further renders it less persuasive." [DE 8 at 32]. The fact that "evidence has been solicited by the claimant is not a sufficient justification to belittle or ignore evidence." *Punzio*, 630 F.3d at 712. Accordingly, the Commissioner had no choice but to concede that the ALJ's notation was improper. This error alone may not have been enough to justify remand if the ALJ had otherwise articulated valid reasons for discounting Dr. Chism's opinion. *See Anderson v Colvin*, No. 3:15-CV-00311-MGG, 2016 WL 6122921, at *5 (N.D. Ind. Oct. 20, 2016). As discussed above, however, the ALJ failed to demonstrate that he considered the record as a whole in his analysis of Dr. Chism's opinion. As a result, remand is warranted and the ALJ on remand should ensure that he is not influenced to discount Dr. Chism's opinion merely because Rhoades sought the opinion as part of the SSA application process.

9

### B. Step Three Listing Analysis

Rhoades also challenges the ALJ's Step Three Listing analysis. Rhoades contends that she has produced medical evidence that shows that her mental impairments meet or equal a Listing and therefore qualify her for benefits. Rhoades argues that the ALJ's improper discounting of Dr. Chism's opinion led to the allegedly faulty Step Three analysis.

At Step Three of the disability analysis, the ALJ must determine whether a claimant's impairment or combination of impairments is of a severity to meet to medically equal the criteria of any impairment listed in 20 Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant produces medical proof from a physician that she meets all the components of a Listing, she is presumptively eligible for benefits. 20 C.F.R. § 416.920(d).

In Rhoades's case, the ALJ addressed Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders).[2] The Listings require the ALJ to determine whether the claimant meets or medically equals the specific medical criteria included in Paragraph A of each Listing and whether the claimant satisfied the requirements in either Paragraph B or Paragraph C for each Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Rhoades describes evidence in the record in an apparent effort to show that she satisfied the Paragraph A criteria. Yet the ALJ did not discuss the Paragraph A criteria in his Step Three analysis. Therefore, the Court assumes that the ALJ found the Paragraph A criteria satisfied and the Court need not address them further here.

However, the ALJ's decision explicitly cites evidence as support for his conclusions that Rhoades has not satisfied the Paragraph B criteria. To satisfy the Paragraph B criteria, a

---

[2] The ALJ also addressed Listing 12.08 (personality disorders), but the Court need not address it here because Rhoades has only challenged the ALJ's conclusion regarding Listings 12.04 and 12.06.

claimant must establish at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The ALJ concluded that Rhoades only has mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation of extended duration. Rhoades argues that Dr. Chism's opinion supports finding that Rhoades satisfied the Paragraph B criteria.

Here, the ALJ makes the same mistake discussed above by citing only to evidence in support of his determination while ignoring evidence showing the waxing and waning nature of Rhoades's mental health symptoms. Moreover, a change in the weight afforded to Dr. Chism's opinion, which suggests extreme limitations sufficient to satisfy the Paragraph B criteria, could affect the analysis of whether Rhoades's impairments meet or medically equal Listing 12.04 or 12.06 to qualify her for SSI benefits. After a proper analysis of the weight to be afforded to Dr. Chism's opinion and careful attention to the record as a whole, the ALJ on remand should reassess the Step Three Listing analysis, particularly the question of whether Rhoades has established the relevant Paragraph B criteria.

### III. CONCLUSION

For the reasons stated above, the Court finds that the ALJ's RFC determination and Step Three Listing analysis are not supported by substantial evidence. Therefore, this case is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion and Order. The Clerk is **DIRECTED** to terminate the case.

**SO ORDERED.**

Dated this 18th day of December 2017.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge